# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY CLARENCE STATELY,<br><br>Defendant. | Civil No. 12-089 (JRT/LIB)<br><br>**ORDER ADOPTING REPORT & RECOMMENDATION OF MAGISTRATE JUDGE** |

Jeffrey S. Paulsen, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY,** 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Caroline Durham, Assistant Federal Defender, **OFFICE OF THE FEDERAL DEFENDER**, 107 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendant.

On the night of May 30 and into the early morning hours of May 31, a series of drive-by shootings took place on the Red Lake Indian Reservation. This case involves a search of Defendant Timothy Clarence Stately's mother's home, pursuant to a tribal warrant, during which police recovered a sawed-off shotgun and ammunition. Stately moved to suppress this evidence on the ground that probable cause did not support the search warrant. (May 14, 2012, Docket No. 21.)[1] Before the Court are Stately's timely objections to the Magistrate Judge's Report and Recommendation (R&R), which recommended denying Stately's motion. (July 3, 2012, Docket No. 40.) Because the

---

[1] Stately's claim that the search was without consent is not germane to the present motion. (*Id.*)

1

Court finds that the good faith exception to the exclusionary rule applies, it will overrule Stately's objections, adopt the R&R, and deny Stately's motion to suppress.

## BACKGROUND[2]

On May 31, 2011, the Red Lake Tribal Court issued a warrant to search Stately's mother's home on the basis of an application and supporting affidavit filed by Red Lake Criminal Investigator Colin Brunelle. (Hr'g Ex. 1.) Brunelle has been employed as a Criminal Investigator by the Public Safety Department of the Red Lake Band of Chippewa for five years, though he has spent the last 27 years in law enforcement. (*Id.*)

The R&R aptly summarizes both the facts set forth in Brunelle's affidavit and those elicited at the suppression hearing but not included in the affidavit. (*See* R&R at 2-6.) Briefly, on May 30 beginning around 11:30 pm police received three emergency phone calls reporting drive-by shootings in Redby, Minnesota and that a trailer house had been set on fire in the "Big Stone area." (Hr'g Ex. 1.) Officers responded to each call, and Brunelle tasked additional officers with identifying moving vehicles in the area and marking down license plates. (*Id.*) Responding officers recovered spent shotgun casings, and, at the burning trailer home, observed "glass from a possible busted window from a vehicle." (*Id.*) While investigating these first three events, police received a call reporting gunshots in the Ponema, Minnesota area – approximately 25 miles away from Redby. Police dispatch learned, however, that the call was placed from "the same area that [Stately's] mother lives." (*Id.*)

---

[2] For a complete recitation of the facts, see R&R at 1-6.

At approximately 3:45 a.m., an officer reported to Brunelle the license plate numbers of two vehicles he observed in the "McBrides area" – an area in Redby that abuts Highway 1. (*Id.*; Hr'g Tr. at 18, July 2, 2012, Docket No. 39.) One belonged to a Doris Kingbird; the other belonged to Stately. (Hr'g Ex. 1.) The officer observed Stately's vehicle entering the McBrides area; Kingbird's vehicle was exiting the area. (*Id.*) The vehicle registered to Stately was a "Pontiac 4 Door Dark blue in color." (*Id.*) Brunelle then heard shots fired, and several minutes later police received a report of a shooting at a McBrides-area home. (*Id.*) After discovering the owners of the two reported vehicles, Brunelle instructed officers to locate them, and an officer soon discovered Stately's vehicle parked behind his mother's home, near the intersection of Highways 1 and 40. (*Id.*)

At the suppression hearing, Brunelle provided additional information both about facts he had included in the affidavit and about facts that he had inadvertently omitted. Brunelle testified that the two vehicles reported were the only ones observed in the McBrides area at the time, and that Stately's vehicle was observed entering the area whereas Kingbird's vehicle was observed exiting the area. (Hr'g Tr. at 21.) Brunelle also testified that officers – including himself – reported more than ten other license plates as being seen in the larger area, but no evidence emerged at the hearing as to where specifically the officers observed these other vehicles or how close they were to the McBrides area, where the fourth incident took place. (*See id.* at 39-40, 45, 48.) Brunelle also observed that he inadvertently neglected to include in the affidavit that the officers dispatched to Stately's mother's residence observed that Stately's vehicle had a broken

window on the back passenger side and shattered glass scattered on the back seat. (*Id.* at 28.) Brunelle intended to include this fact in the affidavit but failed to do so because he was dealing with four major crime scenes and had been working continuously for a twenty-four hour period. (*Id.*)

Brunelle also testified that from prior experience, he believed that the phone call reporting shots fired in the Ponema area, placed from "the same area that [Stately's] mother lives," was intended to divert officers' attention from the Redby area. (*Id.* at 24-25.) Brunelle testified, however, that beyond the call being placed from that area, he had no information that would directly connect Stately to the phone number used to make the call. (*Id.* at 41-42.) In fact, officers called the number and listened for a ring from any of the three cellphones visible through the windows of Stately's car, but heard no ring. (*Id.*) Police also heard no ring emerging from phones inside Stately's mother's house. (*Id.*) The affidavit did not mention that officers were unable to verify who made the call.[3]

## ANALYSIS

I. **STANDARD OF REVIEW**

A search warrant must be based upon a finding that there is probable cause to believe that evidence of a crime will be found in the place searched. *See United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007).[4] While the ordinary sanction for searches

---

[3] The affidavit also did not mention that a witness had observed a car with "possibly" two doors.

[4] Probable cause exists if, considering the totality of the circumstances, a reasonable person could conclude that there is a "fair probability" that the object of the search warrant may be found in the place searched. *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir.2000) (citing *Illinois v. Gates,* 462 U.S. 213, 238 (1983)).

4

conducted in the absence of probable cause is suppression of the evidence recovered in the illegal search, this exclusionary rule is not applicable "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)). Among other circumstances, an officer does not rely on a warrant in good faith when the affidavit supporting the warrant contained reckless, knowing or intentionally false statements that misled the issuing judge or was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quotation marks and citations omitted). In determining whether the executing officer had an objectively reasonable belief that probable cause existed, the Court considers the totality of the circumstances, including information known to the officer but not presented to the issuing judge. *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). Simply put, the "objectively ascertainable" inquiry is whether a reasonably well trained officer would have known that the search was illegal in light of all the circumstances. *Herring v. United States*, 555 U.S. 135, 145 (2009).

## II. STATELY'S MOTION TO SUPPRESS

The Magistrate Judge concluded that Brunelle's affidavit was insufficient to support a finding of probable cause but that Stately's motion to suppress should nonetheless be denied because the good faith exception to the exclusionary rule applies. *See Leon*, 468 U.S. at 922. Stately objects that the good faith exception does not apply

because (1) Brunelle intentionally and recklessly omitted important information that would undermine a finding of probable cause,[5] and (2) Brunelle's affidavit was so lacking in probable cause that his reliance on it was objectively unreasonable. These issues appear to be related. Stately argues, it seems, that particularly in light of certain critical omissions the affidavit was so lacking in probable cause that Brunelle's reliance on it was objectively unreasonable. The Court will proceed directly to the applicability of the good-faith exception, rather than assess the existence of probable cause. *United States v. Patten*, 664 F.3d 247, 250-51 (8th Cir. 2011).

Stately points to the affidavit's omission of three facts: (1) while the affidavit mentions only two vehicles, Brunelle knew that ten or more vehicles were observed in the area that night, (2) a witness reported seeing a car in the area with two doors, whereas Stately's car has four doors, and (3) the affidavit implied that the alleged diversionary call had been made around Stately's mother's house, but did not mention that the police heard no ringing from either the phones in Stately's car or from inside Stately's mother's house when they attempted to determine if Stately had made the call. The United States points out that Brunelle knew Stately's vehicle had a broken rear window, but inadvertently omitted it from the affidavit.

---

[5] Stately relies on *United States v. Reilly*, 76 F.3d 1271, 1280-81 (2d Cir. 1996), in which the Second Circuit declined to apply the good faith exception where the affidavit supporting the warrant request omitted "all potentially adverse information," without which "the issuing judge could not possibly make a valid assessment of the legality of the warrant." The Eighth Circuit has described this set of circumstances as "when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge." *Fiorito*, 640 F.3d at 345 (citation omitted).

The Court finds that omission of this information does not render the good faith exception inapplicable. Brunelle's failure to include this information is not akin to the "almost-calculated-to-mislead" affidavit of which the Second Circuit disapproved in *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996). First, while ten vehicles were observed somewhere in the Red Lake Indian Reservation that night, only the two cars mentioned in the affidavit were observed in the McBrides area, the area of the fourth incident, at the relevant time. Moreover, Stately's vehicle was the only one seen entering the area at the relevant time. Second, Brunelle's failure to mention that a witness had seen a car with "possibly" two doors is not material because the witness was plainly unsure about how many doors the car had. Third, that the police failed to hear ringing from the phones visible in Stately's car – or from the open window in his mother's house – is inconclusive as to whether Stately, an accomplice, or someone else entirely, made the call. Nothing in the record, for example, speaks to whether the visible phones were even turned on. These omissions – considered together or in isolation – are not so critical as to suggest that Brunelle did not apply for and execute the warrant in good faith. *Cf. Reilly*, 76 F.3d at 1280 (finding the absence of good faith where omitted information was "clearly critical" to assessing the legality of the search). Moreover, nothing in the record suggests that Brunelle "knowingly and intentionally or with reckless disregard for the truth" omitted this information to mislead the tribal judge into issuing a warrant. *Fiorito*, 640 F.3d at 345.

Critically, the good faith inquiry also requires the Court to consider what Brunelle knew, but failed to include in the affidavit. *Perry*, 531 F.3d at 665. Of the alleged

7

omissions that the parties raise, by far the most important **supports** the inference that Brunelle acted with a good faith belief in the existence of probable cause. Brunelle knew that Stately's vehicle had a broken rear window and glass strewn about the back seat. This information supports a finding of probable cause because officers observed broken glass "from a possible busted window from a vehicle" at one of the crime scenes. The other allegedly critical omissions are far less important than the broken glass, which an objectively reasonable officer might understand as a connection between Stately's vehicle – observed entering the McBrides area minutes before the third shooting (the fourth incident) occurred there – and one of the earlier crime scenes. In short, this Court cannot hold that a reasonably well-trained officer with knowledge of the broken glass and that Stately's vehicle was observed entering the McBrides area just minutes before the shooting there must have known that probable cause was lacking. Indeed, the Court agrees with the Magistrate Judge that, had Brunelle included the information about the broken glass in his affidavit, probable cause for the search of the Stately premises would undoubtedly have existed.[6] (R&R at 14.) But even assuming that probable cause was lacking, because Brunelle had objectively reasonable grounds to believe that the warrant was properly issued, the good faith exception to the warrant requirement applies, and the evidence need not be suppressed.[7] *See Leon*, 468 U.S. at 922.

---

[6] To resolve this motion, however, the Court need not, and does not, express a view as to whether the affidavit, as written, supports a finding of probable cause.

[7] Stately's reliance on *United States v. Herron*, 215 F.3d 812 (8th Cir. 2000) for the proposition that no reasonable officer could have relied on the warrant rooted in Brunelle's affidavit is unpersuasive. In *Herron*, the Court found the good faith exception inapplicable

# ORDER

Based on the foregoing, and the records, files, and proceedings herein, the Court **OVERRULES** defendant Timothy Stately's objections [Docket No. 42] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated July 3, 2012 [Docket No. 40]. **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 21] is **DENIED**.

DATED: August 10, 2012            _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                         United States District Judge

---

where the affidavit presented **no** facts that the defendant was involved in marijuana activities or that these activities were occurring on the premises searched. *Id.* at 814 n.2 (noting that the various affidavits made only passing references to the defendant and the defendant's property). Assuming, as the Magistrate Judge found, that Brunelle's affidavit does not support a finding of probable cause, it is still not as threadbare as the *Herron* affidavits with respect to Stately. The affidavit provides that Stately's vehicle was observed entering the relevant area just minutes before shots were heard, and Brunelle knew, as discussed above, that the broken glass observed at one of the crimes scenes was consistent with the "busted" rear window of Stately's car.